UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,            )   Case 00-10125-JLT
                      Plaintiff      )
                                     )
v.                                   )
                                     )   04-12071 JLT
MICHAEL D. RICHMOND,                 )
                      Defendant      )
                                     )

MOTION UNDER 18 USC § 2255 TO VACATE

SET ASIDE, OR CORRECT SENTENCE

NOW COMES THE DEFENDANT, MICHAEL RICHMOND (Richmond),
Pro Se, and asks this honorable court to vacate his sentence
pursuant to 28 USC § 2255, and for this court to correct his
sentence and release him from imprisonment or reduce his time
left on supervised release.

I. JURISDICTION

Richmond is being held because of a violation of his
constititional rights to have a jury determine beyond a rea-
sonable doubt all facts legally essential to his sentence.

This court has specific jurisdiction to hear this case
since Richmond is currently imprisoned at Oxford Prison Camp
and this motion is being made pursuant to 18 USC § 2255, in
that, it is being made within a one year period "on new legal
principles in First Circuit or Supreme Court decided after the
date of this Agreement which are held by the First Circuit or
Supreme Court to have retroactive effect." per his plea agree-
ment signed 4/11/2001 accepted by this court.

1

STATEMENT OF THE CASE

Richmond was indicted by a grand jury on April 7, 2000 for mail fraud and money laundering out of the Boston Massachetts district.

Richmond entered a guilty plea on April 11, 2001 wherein he pled guilty to mail fraud (base level 6). Richmond also agreed to a 14 point enhancement under U.S.S.G. §2F1.1(b)(1)(O) for a loss of $8,617,361.15. more than minimal planning added 2 more points. Richmond filed a Defense Sentencing Mitigation Memorandum (Encl 1) disagreeing with the vulnerable victim under § 3A1.1 and also argued against the 2 point enhancement for 3B1.1. Richmond also received a 3 point downward departure for acceptance of responsibility.

Judge Tauro sentenced Richmond on April 11, 2001 to 50 months imprisonment, a $1700 fine, restitution of $8,617,361.15, and 36 months of supervised release. Judge Tauro applied the middle of the sentencing rage for Guidline level 23 when making his determination of 50 months (Range at 23 was 46-57 months) (Encl 2, Plea Agreement) Richmond was given a Criminal History of I.

Richmond self-reported to begin his sentence at Oxford Prison Camp on 10/29/2001. He has now served more than 37 months and is scheduled for release on or before Feb 3, 2005. He has a pending dispute in his Good Conduct Time in the U.S. District Court in Madison, Wisconsin that may cause his re-

2

lease in November/December 2004.  Therefore, he has already served the vast majority of his sentence.

Had Blakely, No 02-1632 (Supreme Court, June 24, 2004) been applied to Richmond's case, he would have had his points for sentencing reduced by not including minimal planning and vulnerable victim since his attorneys argued against these two issues in their sentencing memorandum.  If these four points were removed for his sentencing range, he would already have been released and at home serving his supervised release.

Richmond's plea agreement (page 5 and paragraph 6) provides for Richmond to be allowed collateral attack on his sentence per the Blakely and Fanfan decisions in the Supreme Court and First Circuit, respectively:

> "Defendant's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect."

Numerous Blakely-type cases have been favorably decided in the district and appelate courts providing Richmond with an urgent opportunity to bring his motion to his sentencing court for a review.  In light of the favorable decisions of Blakely, Fanfan, and Moran, Richmond is likely serving time in prison that is undeserved.

Richmond plans to return home to help support his wife and child upon his release and find gainful employment as a productive member of society.

3

## II. SUMMARY OF ARGUMENT

Richmond has a Constitutional right under the Sixth Amendment to have a jury determine whether he is guilty beyond a reasonable doubt of any elements of a crime that will enhance his prison sentence.  Blakely v Washington, No 02-1732 (June 2004), se also Apprendi v New Jersey, (2000) 530 U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348.

Richmond was initially sentenced to 50 months in prison based on Guideline level 23 with a criminal history of I.  Be cause of his enhancements for "manager" under U.S.S.G. §3B1.1 (c) (two point enhancement) and "vulnerable victims" under U.S.S.G. §3A1.1(b) (two point enhancement) he will have served more than a year than he should have been required. (Encl 2)

The U.S. Supreme Court on 06/24/04 decided Blakely v Washinton (No 0201632 (June 24, 2004)).  That court applied the rule of Apprendi v New Jersy, 530 U.S. 446, 990; stating that:

> "[O]ther than the fact of a prior conviction, any fact that increased the penalty for a crim beyond the prescribed statutory maximum must be submitted to a jury or proven beyond a reasonable doubt."

The relevant statutory maximum for Apprendi purposes is the maximum a judge may impose based soley on the facts reflected in the jury verdict or admitted by the defendant. Richmond's original sentence did not comply with the rule of Apprendi since that sentence exceed by 13-20 months that he probably could have been given if he had received no such enhancements.

4

III. ARGUMENT

A. APPLICATION OF BLAKELY TO THE

U.S. SENTENCING GUIDELINES

On June 24, 2004, the United States Supreme Court decided Blakely v Washington, which contested the application of the Washington state sentencing scheme. Blakely v Washington, 124 S.Ct. 2531 (2004). In Blakely, the defendant entered a guilty plea to the offense of second-degree kidnapping and admitted allegations regarding domestic violence and firearms. Id at 2434-35. However, at sentencing, the judge increased Blakely's sentence because he had acted with "deliberate cruelty" during the crime. Id at 2535. This fact had neither been proven by the Government beyond a reasonable doubt to a jury nor been admitted by the defendant. Id.

In reversing and remanding Blakely's sentence, the Supreme Court applied the principles announced in Apprendi v New Jersey to sentencing determinations. Id at 2536-38 (citing Apprendi v New Jersey, 530 U.S. 466, 490 (2000)). The court reaffirmed its rule that "Other than the facts of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Blakely, 124 S.Ct. 2531, 2537; Apprendi, 530 U.S. at 476.

While the Supreme Court stated that it was not expressing any opinion regarding the validity of the Federal Sentencing Guidelines, Justice o'Connor's dissent noted that the Federal

Guidelines are now "more vulnerable to attack." <u>Id at 2549</u>
(O'Connor, J. dissenting).

Indeed, the First Circuit recently decided in <u>United</u>
<u>States v Fanfan, No. 03-47-P-H (D. Me 2004), petition for</u>
<u>cert. filed 75 Crl 2091 ( US 2004) (No 04-105)</u>, that it is
unconstitutional for [the court] to apply the Federal Guide-
line enhancements in the sentence of [respondent]" and that
"[T]o do so would unconstitutionally impinge on [repondent's]
Sixth Amendment right to a jury trial as explained in Blake-
ly." <u>Id at 11a</u>.  The court reduced Fanfan's total offense
level from 34 to 25 based on the fact that it was no longer
able to decide Fanfan's relevant conduct or give him a two
level enhancement for being an organizer, leader, manager or
supervisor of a criminal activity, since those facts had not
been proven beyond a reasonable doubt to a jury.  These find-
ings were made by the district court in Fanfan's sentence and
the Government bypassed the appellate court in obtaining cert
to the U.S. Supreme Court.

The Seventh Circuit also decided in <u>United States v Book-</u>
<u>er, 375 F.3d 508 (7th circuit 2004)</u>, that the Federal Senten-
cing Guidelines as applied to <u>Booker</u>, were unconstitutional
in light of <u>Blakely</u>. (See Note 1, all notes at end of brief)
In <u>Booker</u>, the district court determined that relevant conduct
increased the drug amounts upon which the defendant was sen-
tenced by 566 grams over the 925 grams found by the jury.  <u>Id</u>
<u>at 508</u>.  The district court had also increased Booker's offense

level for obstruction of justice.  Id.

Federal courts have been issueing opinions and orders upholding Blakely's propostion that the Sixth Amendment requires that any fact that enhances a defendant's sentence be proven to a jury beyond a reasonable doubt.  See US v Moran, 02-10136 REK (Dist of Mass, July 8, 2004 - Keeton); U.S. v Montgomery, 2004 Fed. App. 0226P (6th cir, July 14, 2004); U.S. v Zompa, No. 04-46-P-S-01, US Dist Ct, Maine, 26 Jul 2004 U.S. v Pineiro, 03-30437 (5th cir 2004); U.S. v Peneranda, No 03-1055, 2004 U.S. App Lexis 14268 (9th cir July 12, 2004); U.S. v Amerline, No 02-30326, 2004 WL 1635808 at #8 (July 21, 2004); U.S. v Ohlinger, No 03-3380, 2004 U.S. App Lexis 15836 (7th Cir 8/2/04); U.S. v Mooney, 75 CrL 487 (8th cir 2004); U.S. v Pirani, No 03-2871 (8th cir 8/5/04); U.S. v Hammond, 4th cir  No 03-4253 (8/2/04); and U.S. v Montgomery, 2004 Fed App 0226P (6th cir 7/14/04). (See Note 2).

Federal district courts have been issueing opinions and orders regarding Blakely almost daily.  These opinions are consistant on the fact that a convicted defendant's sentence cannot  legally  be enhanced by the sentencing judge unless the jury decided these facts or the defendant pled to the facts that established the sentencing ranges.  Some call the Federal Guidlines unconstitutional but most make no ruling on the constitutionality of the Federal Guidelines, only findings that Blakely forbids enhancements under the pre-Blakely, preponderence of the evidence standard.                All have

found that there is no principal distinction between the Washington Sentence Reform Act at issue in <u>Blakely</u> and the United States Sentencing Guidelines.  Under the Washington scheme, like the federal scheme, one statute established a standard range when the sentencing judge found the existance of certain aggravating factors.  Contrary to the DOJ's official post-<u>Blakely</u> position on the matter, the fact that the Federal Guidelines' presumptive ranges are not clearly set out in a statute represents a meaningless distinction between the two schemes in light of Congress' control over the promulgation of the Guidelines and <u>Blakely's</u> finding that Washington State Guidelines were unconstitutional.

Richmond made objections at his sentencing hearing to his enhancements but did not object to the constitutionality of the enhancements under <u>Apprendi</u>, but rather to the factual issues on his role in the scheme and whether he had solicted vulnerable victims.

Had Richmond not been given four points on his sentencing for the enhancments, he would have been at a Guideline range of 19, with a criminal history of I.  This range would have given Richmond a sentence of 30-37 months.

B. RICHMOND SHOULD BE ALLOWED TO MAKE <u>APPRENDI</u> OBJECTIONS TO HIS SENTENCE ENHANCEMENTS SINCE FED. RULE OF CRIMINAL PROCEDURE 52(b) ALLOWS HIM TO NOW OBJECT UNDER THE PLAIN ERROR STANDARD

The Federal Plain Error Rule, Fed R. Crim P. 52(b), re-
quires defendants seeking correction of an error that was
not objected to in the district court to demonstrate that the
error was "plain," that it prejudiced the defendant, and that
it is the type of error that implicates the Fairness of the
proceedings. (See note 3)

C. THE DISTRICT COURT ERRED IN DETERMINING RICHMOND'S
SENTENCE, RELYING ON EVIDENCE THAT WAS NOT AGREED TO IN HIS
PLEA AGREEMENT, OR NAMED AS A FACTUAL ELEMENT OF HIS INDICTMENT

Richmond was indicted on Arpil 6, 2000. Nothing in that
indictment mentioned the number or any special factors that
could led this court to a factual finding that he should have
been enhanced two points for vulnerable victions.  The indict-
ment never mentioned the ages of the victims or whether an
elderly segment of society was specifically targeted by Rich-
mond.  The first indiction that Richmond had that the status
of the victims was going to be an issue was when he viewed
the PSI.  Richmond alledged that the fact that some of his
victims  were elderly was just the indiscriminate factor that
occurs as some of his "victims" took advantage of the invest-
ment opportunities that he offered.  Richmond made a strong
objection to this court on this issue and Judge Tauro found
againt him on that issue.

Richmond also disputes his role in targeting vulnerable
victims (elderly) and his two point enhancement under 3B1.1

9

Even though he pled guilty to more than minimal planning in his plea, that enhancment was never laid out as an element of his crime in either his indictment or plea agreement, and Richmond now questions whether there was a factual element for that plea.

D. THE BLAKELY COURT'S RULE THAT JUDGES CANNOT MAKE FINDINGS THAT ENHANCE SENTENCES WITHOUT A FACTUAL BASIS FOR THE FINDINGS IS A NEW STRUCTURAL RULE, IMPLICATING FUNDAMENTAL FAIRNESS AND INCREASING THE ACCURACY OF THE CRIMINAL PROCEEDINGS

The crux of the Blakely decision is a case called Apprendi v New Jersey, 530 U.S. 466, 490 (2000), which stood for the proposition that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. Apprendi involved a hate crime law that allowed judges to impose sentences beyond the usual maximum if racial animos lay behind the crime. In Apprendi, a man who had fired a gun into a black family's house was sentenced to twelve years in prison - two more years than the maximum for firearm possession. The court, however, struck down the sentence because the defendant's racial motivation had not been proven to the jury; rather, it had been found by a judge. "other than the fact of a prior conviction," the court held, "any fact that increased the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury

and proved beyond a reasonable doubt." Id.

Since Apprendi came out, numerous circuits have ruled that a "fact" that increased a sentence was really a procedural part of the sentencing process. (See Note 4) The Supreme Court in Ring v Arizona, 536 U.S. 610 (2002), stated that Apprendi's requirements are procedural and not structural and Apprendi was not made retroactive by any circuit.

The Blakely court changed the  definition and meaning of "fact" and statutory maximum stated in Apprendi. A "fact" that pushes a sentence above the statutory maximum for the offense is really an "element" of a more serious crime, and every element of a crime has traditionally had to be proven to a jury. But, judges have always considered facts in sentencing that were not proved to the jury.  So, Apprendi forced the question of which sentencing factors must count as "elements" and which facts judges could still consider on their own.  In Blakely, the court clearly answered the question: anything that increases a sentence beyond a "standard range" set by law is by definition an "element," so that a judge may not consider it in sentencing unless it has been proven to a jury.

The requirement to prove beyond a reasonable doubt is central to protecting the rights of the accused and the accuracy of the ciminal convictions.  The Supreme Court has articulated the importance of that burden of proof in several contexts.  In Cage v Louisiana, 498 U.S. 39  (1990)      , the court emphasized the vital role of the reasonable doubt stan-

dard in avoiding convictions based on factual error: "[T]he
Due Process clause of the Fourteenth Amendment "protects the
accused against conviction except upon proof beyond a reason-
able doubt of every fact necessary to constitute the crime
for which he is charged."  In re Winship, 397 U.S. 358, 264...
(1970)... this "reasonable doubt standard "plays a vital role
in the American scheme of ciminal prosecution." Winship 397
397 U.S. at 363.  Among other things, "it is a prime instru-
ment for reducing the risk of convictions resting on factual
error, 489 U.S. 39, 39,-40 (1990)(some internal citations omi-
tted).  Winship itself makes clear that the requirement of
beyond a reasonable doubt is grounded upon accuracy concerns:

> "The requirement of proof beyond a reasonable
> doubt has this vital role in our criminal procedure
> for cognant reasons.  The accused during a criminal
> prosecution has at stake interests of immense impor-
> tance, both because of the certainty that he may lose
> his liberty upon conviction and because of the cer-
> tainty that he would be stigmatized by the conviction.
> Accordingly, a society that values the good name and
> freedom of every individual should not condemn a man
> for a commission of a crime when there is reasonable
> doubt about his guilt."  397 U.S. at 364

Reversing Blakely's exceptional sentence was consistant
with the constitutional values that motivated the Sixth Amend-
ment right to a jury trial and the decision in Apprendi and
Ring.  Denial of the right to a jury trial was one of the
Framer's chief complaints, "Royal interference with the jury
trail was deeply resented."  Duncan v Louisianna, 391 U.S. 145,
152 (1968).  The Declaration of Independence itself voiced
objections to the king's practices of "depriving us in many

cases, of the benefits of trial by jury." The decision that juries should have a major responsibility for criminal justice was broadly conceived by the Framers, who believed that the common people should have as complete control over the judiciary as over the legislature." The Works of John Adams 253 (C Adams ed 1850) (diary entry Feb 12, 1771).

"That right is not a procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures    the people ultimate control of the legislative and executive branches, jury trial is meant to ensure their control of the judiciary." U.S. v Booker, 375 F.3d 508, 510 (7th cir 2004) citing letter XV by the Federal Farmer (Jan 18, 1788) reprinted in the complete Anti-Federalist 315, 320 (H Storing ed 1981). Clearly, the Blakely court did not consider its decision a procedural matter but a serious structural issue of constitutional law.

E. BLAKELY ANNOUNCED A NEW RULE THAT FALLS WITHIN THE "WATERSHED EXCEPTION" TO THE NON-RETROACTIVITY OF TEAGUE

A rule that qualifies under the exception "must not only improve accuracy [of the trial and conviction]. but also alter our understanding of the bedrock procedural elements essential to the Fairness of a proceeding." Sawyer v Smith, 497 U.S. 227 242 (1990). Blakely and Apprendi meet these qualifications. They raise the standard for determining factors that subject a criminal defendant to a higher term of imprisonment from a preponderence of the evidence to beyond a reasonable doubt,

13

thereby increasing accuracy. The cases also require such
factors to be submitted to a jury, thereby enforcing a defen-
dant's constitutional right to a trial by jury. Similarly,
the requirement that every element of a crime, defined as every
fact that increases the statutory maximum, be charged in the
indictment improves the accuracy of the fact finding process,
because it reduces the risk that an innocent person might be
convicted of a more serious crime, or that a guilty person
might be punished more severely than the law allows.

The language used by the Supreme Court in <u>Blakely</u> is
instructive. The court stated: "Our commitment to <u>Apprendi</u>
reflects not just respect for the longstanding precedent, but
the need to give intelligible content to the right of jury
trial. That right is nor mere procedural formality, but a
fundamental reservation of power in our Constitutional struc-
ture." The court described the state procedure before it,
wherein a factor that increased the statutory maximum of an
offense was decided by the judge, "based not on facts proved
to his peers beyond a reasonable doubt, but on facts extract-
ed after trial from a report compiled by a probation officer
who the judge thinks more likely got it right than got it
wrong." <u>Blakely</u> 6-24-04)

F. BLAKELY SHOULD BE APPLIED RETROACTIVILY TO RICHMOND
SINCE IT ANNOUNCED AND CLARIFIED A NEW CONSTITUTIONAL RULE

Retroactivity is properly treated as a threshold question,

14

for once a new rule is applied to the defendant in the case announcing the rule, even-handed justice requires that it be applied retroactively to all who are similarly situated.

A case announces a new rule when it breaks new ground or imposes a new obligation on the states or federal government. Rock v Arkansas, 483 U.S. 44 (1987). To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.

The Blakely case changed the rules of federal sentencing by taking the authority away from the sentencing judge to find the facts that determine a criminal defendant's sentence and giving the discretion back to the jury. This rule is fundamental and structural to our way of justice. Now, only a jury using the "beyond a reasonable doubt standard" can find facts that enhance sentences. Previous to Blakely, the judge could use "preponderence of the evidence" to interpret facts that enhanced a sentence. The Blakely decision changed the rule on the standard of proof used in sentencing.

"The finding of facts (other than the fact of the defendant's criminal history) bearing on the length of the sentence is just what the Supreme Court in Blakely has determined to be the province of the jury." U.S. v Booker, No 03-4225, 2004 WL 1535858 (7th Cir July 9, 2004).

The court recognized in Fanfan and earlier in Blakely

that the reasonable doubt standard was at stake.  This stan-
dard as stated in re Winship, 397 U.S. 358 (1970), "Plays a
vital role in the American scheme of criminal procedure.  It
is a prime instrument for reducing the risk of convictions
resting on factual error.  The standard provides concrete
substance for the presumption of innocense --- that bedrock
axiomatic and elementary principle whose enforcment lies as
the foundation of the administration of our criminal law." Id
at 363.  This indicates the Supreme Court's own understanding
that Blakely  and the First Circuit understanding of Blakely
recognizes bedrock principles that are implicit in the concept
of ordered liberty and touch on the Fundamental Fairness of the
trial system.  Indeed, the Blakely court stated that the right
to have a jury set penalties for criminals "is no mere proce-
dural formality, but a fundamental reservation of power in our
constitutional structure."  Blakely at 4.

    G. EVEN IF THIS COURT FINDS THAT BLAKELY ENUNCIATED

    A NEW PROCEDURAL RULE RATHER THAN A STRUCTURAL RULE,

    BLAKELY WOULD STILL BE RETROACTIVE TO RICHMOND BECAUSE

THE RULE IT ENUNCIATED FALLS WITHIN THE 2ND TEAGUE EXCEPTION

    On the same day the court decided Blakely, it decided a
case on reroactivity of Supreme Court rules.  In Shrirro v
Summerlin,  No. 03-526, 2004 WL 14002732, at 5-7 (U.S. June
24, 2004), a five justice majority concluded that the decision
in Ring v Arizona, 536 U.S. 610 (2002), applying Apprendi

16

to Arizona's capital sentencing scheme, does not apply retro-
actively under Teague.  The court began by reiterating Teague's
second exception for new rules, "implicating the Fundamental
Fairness and accuracy of the criminal proceedings." Id at 3.
The court proceeded to parse this requirement, "that a new
rule is 'Fundamental' in some abstract sense is not enough; the
rule must be one 'without which the liklihood of an accurate
conviction is seriously  diminished.'" Id (Quoting Teague, 489
U.S. at 313).  The court went on to examine and reject the
ninth's circuit's conviction that Ring fell within the second
Teague exception, concluding that judicial fact-finding under
a reasonable doubt standard was not shown to seriously dimin-
ish the accuracy of the sentencing.  Id at 5-7.

   The  Shrirro majority's analysis of the second Teague
exception began with its terse acknowledgement that the rules
at issue were "fundamental."  Id at 3, and then proceeded
through  a detailed analysis of the accuracy prong of the
second exception, Id at 5-7.  In the end, the court reiterated
that the right to a jury trial is fundamental to our system of
criminal procedure, but the Ring rule, unlike the Blakely rule,
should not apply retroactively because it does not seriously
enhance accuracy. Id at 6-7.

   The Shrirro decision that Ring should not apply retroac-
tively does not apply here, since the lower standard of proof
undermines the accuracy of the proceedings outcome, because
the determination at issue is Ring was made beyond the reason-

able doubt standard, the <u>Ring</u> decision was still procedural.

In <u>Shrirro</u>, the majority's analysis turned on its con-
clusion that the evidence that "judicial fact finding so
seriously diminished accuracy....' is simply too equivocal
to meet the second prong of <u>Teague's</u> second exception to the
general rule agianst retroactivity.' <u>Shrirro, 2004 WL 140-
2732 at #5</u> (<u>internal modifications omitted</u>). That conclusion
was only limited to the <u>Ring</u> rule, "[b]ecause Arizona law
already provided that aggravating factors to be proved beyond
a reasonable doubt." <u>Id at 2, n1</u> (citing <u>State v Jordan, 126
Ariz 283, 286, 614 P.sd 825, 828 (1990)</u>. Because the rule at
issue here allowed judicial factfinding under the diluted
preponderence of the evidence standard, <u>Shrirro's</u> ultimate
conclusion that accuracy is not "seriously diminished" where a
judge makes findings beyond a reasonable doubt is inapposite.

The Supreme Court has repeatedly recognized the enhanced
accuracy mandated by the rules of <u>Winship</u> and <u>Mullaney</u>. In
<u>Mullaney v Wilbur</u>, the court extended <u>Winship</u> by holding that
the state was required to prove the absence of provocation be-
yound a reasonable doubt, and made that rule retroactive. <u>Mul-
laney v Wilbur, 407 U.S. 203, 205 (1972)</u>, the court gave the
rule announced in <u>Winship</u> retroactive effect, because "the
major purpose of the constitutional standard of proof beyond
a reasonable doubt announced in <u>Winship</u> was to overcome an
aspect of a criminal trial that substantially impairs

18

the truth-finding function." Subsequently, in <u>Hankerson v</u>
<u>North Carolina, 432 U.S. 233, 240 (1977)</u>, the Supreme Court
relied on <u>Ivan</u> and applied <u>Mullaney</u> retroactively, because
"the rule was designed to diminish the probability that an
innocent person would be convicted and thus to overcome an
aspect of a criminal trial that "substantially impacted the
truth finding function." <u>Id at 242</u>.

In <u>United States v Lanier, 220 F.2d 833 (7th cir 2000)</u>
the Seventh Circuit cited <u>Neder</u> in stating that omission of
an element from the district court charge to the jury is not
a structural constitutional error exempt from harmless error
analysis. That court noted that the provisions of <u>Teague</u>
did not apply because <u>Teague</u> only bars retroactive applica-
tion of a new rule of criminal procedure. <u>Teague, 489 U.S.</u>
<u>at 305-306</u>.

In <u>Sepulveda v U.S., 330 F.3d 55, 66 (1st cir 2003)</u>, the
court concluded that the <u>Apprendi</u> rule should not be applied
retroactively. The court revalidated <u>Teague</u> by stating:
"Every provision of federal habeas law is subject to <u>Teague's</u>
doctrinal reach... <u>Teague</u> remains alive and well notwithstand-
ing Congress' enactment of the AEDPA." <u>Id at 66</u>. Because the
Supreme Court did not specifically rule that <u>Apprendi</u> was re-
troactive, <u>Sepulveda</u> could not obtain any retroactive relief.
Because, the rationale of <u>Sepulveda</u> is logically dictated by
the courts ruling that it was Congress' intent to make second
or successive habeas petitions more difficult and this petition

is Richmond's first habeas petition, the exception for retro-
activity of Supreme Court rules apply to him.

Because <u>Blakely</u> upholds <u>Apprendi</u> and both cases stand
for substantive constitutional errors, not procedural errors,
<u>Blakely</u> should be retroactive to Richmond.

H. BLAKELY CHANGED THE DEFINITION OF "STATUTORY
MAXIMUM" AS RECOGNIZED IN APPRENDI AND RICHMOND'S ENHANCED
SENTENCE EXCEEDS THE MAXIMUM THAT HE COULD HAVE BEEN SENTENCED TO

<u>Blakely</u>, did more than just state that a jury must deter-
mine beyond a legal doubt all facts legally essential to Rich-
mond's sentence.  This case redefined what the term "maximum
sentence" means.

Ralph Blakely Jr. was not actually given a sentence beyond
the ten-year maximum for second-degree kidnapping under Washing-
ton state statute.  In fact, he received only seven years and
six months.  Even at  sentence, however, exceeded tha standard
range of the sentencing guidelines for Washington state.  Like-
wise, Richmond's 50 month sentence exceeded the statutory maxi-
mum of the federal guidelines by 13 months (30-37 months).  In
the opinion of Scalia and the rest of the majority in <u>Blakely</u>,
Richmond's enhancements could not be the basis for the greater
sentence he received.

<u>Blakely</u> made it clear that the "statutory maximum" for
<u>Apprendi</u> purposes is the maximum sentence a judge may impose
"solely on the basis of the facts related in the jury verdict

or admitted by the defendant." <u>Blakely at 2563</u>. <u>Blakely</u> re-
defined "statutory maximum" and found that it was the applica-
tion of Washington state's guidelines and increase of senten-
cing <u>ranges</u> by enhancements that violated the Sixth Amendment
as interpreted in <u>Blakely</u>.  Indeed, that case specifically
held: "the statutory maximum" for <u>Apprendi</u> purposes is the
maximum sentence a judge may impose <u>solely on the basis of</u>
facts reflected in the jury verdict or admitted by the defen-
dants." <u>Blakely at 2533</u>.  Since Richmond only admitted to
facts that would have given him a base of 22 (base six, 14 pts
for dollar amounts,  more than minimum planning for 2 pts),
and he received the full 3 pts for acceptance of responsibil-
ity, his 50 month sentence is above the statutory maximum of
that he pled to rather than objected to.  <u>Blakely</u> kept statutory
maximums but threw out the concept of statutory maximums.
Richmond's sentence of 50 months may have been within the five
year statutory maximum, but it exceeded the maximum sentence
of the sentencing range that he pled to.

WHEREFORE, Richmond asks that his sentence be vacated,
that he be resentenced at the lower guideline range, that he
be granted immediate release from prison to supervised re-
lease, and that he be given credit against his term of super-
vised release period for the period that he was wrongly im-
prisoned.

*MICHAEL RICHMOND*
MICHAEL D. RICHMOND

Oxford Prison Camp
P.O. Box 1085
Oxford, WI  53952

21

NOTES

Note 1-    The U.S. Supreme Court will hear both the <u>Fanfan</u>
           and <u>Booker</u> cases in oral arguments on 10/4/04 on an
           expedited basis.

Note 2-    NOt all proper cites are available.  Oxford Prison
           Camp has no index of cases nor does the camp provide
           access to Lexis or Westlaw.  In many cases, cases
           cited are from cases sent to inmates by their families
           that have been pulled of an Internet site.

Note 3-    Plain error has not been discussed in the cases that
           have reached the 1st circuit for review.  Plain error
           review was not discussed in <u>Booker</u> or <u>Fanfan</u> because
           the Government had not raised the argument.  <u>Booker</u>
           <u>no 03-4225, 2004 WL 1535858 at #6</u>; citing <u>United</u>
           <u>State v Olana, 507 U.S. 725, 731 (1993)</u>, most other
           circuits deciding <u>Blakely</u> issues have remanded the
           matter for consideration by the district court with
           out mentioning the applicable standard of review. See
           <u>United States v Panaranda, No 03-1055, 2004 U.S. App.</u>
           <u>Lexis 14268 (9th cir July 12, 2004)</u>.  However, the
           <u>United States v Ameline, no 02-30326, 2004 WL 165808</u>
           <u>at #8 (July 21, 2004) (citing United States v Cotton,</u>
           <u>535 U.S. 625, 628-29 (2002)</u>

Note 4-    See eg.; <u>United States v Swinton, 333 F.3d 481 (3rd</u>
           <u>circuit 2003</u>; <u>Sepulveda v United Stats, 330 F.3d 55</u>
           <u>(1st cir 2003)</u>; <u>Coleman v United States, 329 F.3d 77</u>

i

(2d cir 2003); <u>Goode v United States, 305 F.3d 378 (6th cir 2002); United States v Brown, 305 F.3d 304 (5th cir 2002); Cortis v United States, 294 F.3d 841 (7th cir 2002); United States v Mora, 293 F.3d 1213 (10th cir 2002); United States v Sanchez-Cervantes, 282 F.3d 664 (9th cir 2002); McCoy v United States, 266 F.3d 1245 (11th cir 2001); United States v Moss, 252 F.3d 993 (8th cir 2001); United States v Sanders, 247 F.3d 139 (4th cir 2001)</u>.

CERTIFICATE OF SERVICE

I certify that I did serve this MOTION UNDER 18 USC §2255 TO VACATE, SET ASSIDE, OR CORRECT SENTENCE and a EMERGENCY MOTION FOR RELEASE AND BOND on those listed in the Service List below by placing a copy of same in a mailbox, postage prepaid, located at the Orland Park Post Office on September _24_, 2004.

*Candace L. Richmond*

Candace L. Richmond

SERVICE LIST:

U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Ma  02201

04 - 12071 JLT